**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**CLEVELAND DIVISION**

| | | |
|---|---|---|
| AMYEL LOPES,<br><br>Plaintiff,<br>v.<br><br>CREDIT ACCEPTANCE CORP.<br><br>&<br><br>CREDIT COLLECTION SERVICES;<br>D/B/A CREDIT CONTROL<br>SERVICES, INC.<br><br>&<br><br>TRANS UNION, LLC<br><br>&<br><br>EQUIFAX INFORMATION<br>SERVICES, LLC<br><br>&<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC.<br><br>Defendants. | ) | **COMPLAINT**<br><br>Case No: 1:26-cv-3088<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND JURY DEMAND**

COMES NOW, Plaintiff Amyel Lopes, by and through the undersigned counsel, and for his Complaint against Defendants Credit Acceptance Corp. ("CAC"), Credit Collection Services; d/b/a Credit Control Services, Inc. ("CCS"), Trans Union, LLC ("TU"), Equifax Information Services, LLC ("EQ") and Experian Information Solutions, Inc. ("EXP") (and together collectively, "Defendants") for violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and for violations under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), states as follows:

**JURISDICTION**

1. This court has jurisdiction of the federal claim under 15 U.S.C. § 1681(p).

2. Venue is proper because EXP is headquartered in Cuyahoga County, Ohio, the acts and transactions occurred here, and CAC, CCS, TU, EQ, and EXP transact business here.

3. Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

4. Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

5. Plaintiff resides in the city of Tampa, a part of Hillsborough County, Florida 33612.

6. The acts that occurred giving rise to this complaint occurred while Defendant was headquartered in Ohio, making the Northern District of Ohio a proper venue under 28 U.S. Code § 1391(b)(2).

## STANDING

7. Defendants' credit reporting and/or failure to properly dispute information violated the FCRA.

8. Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. Spokeo, INC. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); Bellwood v. Dwivedi, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

9. "[E]ven though actual monetary harm is a sufficient condition to show concrete harm,

it is not a necessary condition." Lane, 2016 WL 3671467 at *4.

10. FMC's collection activities violated the FDCPA.

11. "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" Lane v. Bayview Loan Servicing, LLC, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016)(quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. See id. at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied her the right to information due to her under the FDCPA."); see also Church v. Accretive Health, Inc., No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

12. "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." Lane, 2016 WL 3671467 at *4.

13. Plaintiff has a congressionally defined right to receive all communications from a debt collector free from any misrepresentations and false threats.

## PARTIES

14. Plaintiff, Amyel Lopes (hereafter "Plaintiff"), is a natural person currently residing in Hillsborough County, in the state of Florida.

15. Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

16. Defendant CAC is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at PO Box 5070, Southfield, MI 48086.

17. CAC is a corporation engaged in the business of collecting debts, using mails and telephone, in this state.

18. Defendant CCS is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at 725 Canton Street, Norwood, MA 02062.

19. CCS is a corporation engaged in the business of collecting debts, using mails and telephone, in this state.

20. Defendant TU is a corporation with its principal place of business located at 555 W. Adams Street, Chicago, IL 60661.

21. Defendant EQ is a corporation with its principal place of business located at 1550 Peachtree St. NE #H-46, Atlanta, GA 30309.

22. Defendant EXP is a corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

23. Defendants CCS and CAC, are each a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

24. TU, EQ, and EXP are each a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(f)). TU, EQ, and EXP regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

a. Public record information;

b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

**FACTUAL ALLEGATIONS**

25. Plaintiff is a natural person allegedly obligated to pay a debt asserted to be owed to a creditor other than CCS and CAC.

26. That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purpose.

27. The reporting of the alleged debt is inaccurate in that it is incomplete to the extent of being misleading to Plaintiff.

28. Plaintiff is a consumer who is the victim of inaccurate reporting by CAC, CCS, TU, EQ, and EXP.

29. CRAs, including TU, EQ, and EXP have a duty under the FCRA to follow reasonable procedures to ensure that the consumer reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. §1681(e)(B).

30. Further, both CRAs and Furnishers have a duty to conduct reasonable investigations when notified of disputed information found in a consumer credit report.

31. Here, Plaintiff is a victim of inaccurate reporting regarding alleged accounts with CCS and CAC, inaccuracies found in credit reports published by the CRA Defendants.

32. The following is a description of the inaccuracies and failures of all Defendants to investigate and update their reporting of the accounts in question.

33. In February 2026, Plaintiff discovered that the account he had with CCS and CAC that were reporting on his credit file were being reported in error.

34. The CCS and CAC accounts harmed the Plaintiff because each account does not accurately depict Plaintiff's credit history and creditworthiness.

35. That CCS was reporting the account on Plaintiff's credit report with EXP.

36. That CCS was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

37. On or about 02/03/26, Plaintiff sent dispute letters via USPS mail to EXP notifying the account with CCS as disputed.

38. These letters provided notice of the inaccurate reporting to EXP.

39. Plaintiff disputed the reporting of an account charged off in 2022 but still showing an outstanding balance.

40. Plaintiff stated the reporting is inaccurate, demanded immediate reinvestigation, and requested removal of the erroneous account.

41. Once EXP received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case CCS.

42. EXP received the letters sent by Plaintiff.

43. EXP transmitted notice of these disputes to CCS via an Automated Credit Dispute Verification form ("ACDV").

44. CCS was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

45. Alternatively, EXP negligently failed to send notice of the disputes to CAC after receiving notice of the disputes from Plaintiff.

46. Alternatively, EXP willfully failed to send notice of the disputes to CCS after receiving notice of the disputes from Plaintiff.

47. After receiving this notice, in any subsequent voluntary reporting, CCS must then include the dispute notation on said account.

48. Defendant CCS re-reported the account to EXP on 04/07/26.

49. On or about 04/10/26, Plaintiff received an updated credit file from EXP.

50. That the updated 04/10/26 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to CCS.

51. Alternatively, that the updated 04/10/26 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify CCS.

52. EXP failed to properly reinvestigate Plaintiff's dispute.

53. As a result of EXP's failure to reinvestigate, the updated 04/10/26 credit report contained inaccurate information.

54. EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

55. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

56. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

57. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

58. That the updated 04/10/26 credit report did not contain updated marked as disputed information.

59. The updated 04/10/26 credit report contained inaccurate information.

60. CCS failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the tradeline.

61. EXP failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

62. CCS must have voluntarily updated the Plaintiff's alleged account by communicating with EXP.

63. That CCS furnished information to EXP regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP of the disputes.

64. That CCS failed to update the account information and mark the account as disputed on the updated 04/10/26 credit report after Plaintiff disputed the account on 02/03/26 and was given notice of such by EXP.

65. In the alternative, if CCS properly updated the account information and marked the account as disputed with EXP after receiving notification of disputes from Plaintiff, then EXP failed to update the account information and mark the account as disputed on the updated 04/10/26 credit report.

66. That CCS never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP.

67. Alternatively, EXP never updated the account information and marked the account as disputed even after receiving information of the dispute remark from CCS in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

68. That CAC was reporting the account on Plaintiff's credit report with TU, EQ, and EXP.

69. That CAC was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

70. On or about 02/03/26, Plaintiff sent dispute letters via USPS mail to TU, EQ, and EXP notifying the account with CAC as disputed.

71. These letters provided notice of the inaccurate reporting to TU, EQ, and EXP.

72. Plaintiff disputed the reporting of an account that was closed but inaccurately shows late payments.

73. Plaintiff stated they were never late and always paid on time, and declared the reporting incorrect.

74. Once TU, EQ, and EXP received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case CAC.

75. TU, EQ, and EXP received the letters sent by Plaintiff.

76. TU, EQ, and EXP transmitted notice of these disputes to CAC via an Automated Credit Dispute Verification form ("ACDV").

77. CAC was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

78. Alternatively, TU, EQ, and EXP negligently failed to send notice of the disputes to CAC after receiving notice of the disputes from Plaintiff.

79. Alternatively, TU, EQ, and EXP willfully failed to send notice of the disputes to CAC after receiving notice of the disputes from Plaintiff.

80. After receiving this notice, in any subsequent voluntary reporting, CAC must then include the dispute notation on said account.

81. Defendant CAC re-reported the account to TU on 06/23/24.

82. Defendant CAC re-reported the account to EQ on 12/01/25.

83. Defendant CAC re-reported the account to EXP on 12/17/25.

84. On or about 04/10/26, Plaintiff received an updated credit file from TU.

85. That the updated 04/10/26 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to CAC.

86. Alternatively, that the updated 04/10/26 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify CAC.

87. TU failed to properly reinvestigate Plaintiff's dispute.

88. As a result of TU's failure to reinvestigate, the updated 04/10/26 credit report contained inaccurate information.

89. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

90. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

91. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

92. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

93. On or about 04/10/26, Plaintiff received an updated credit file from EQ.

94. That the updated 04/10/26 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to CAC.

95. Alternatively, that the updated 04/10/26 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify CAC.

96. EQ failed to properly reinvestigate Plaintiff's dispute.

97. As a result of EQ's failure to reinvestigate, the updated 04/10/26 credit report contained inaccurate information.

98. EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

99. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

100. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

101. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

102. On or about 04/10/26, Plaintiff received an updated credit file from EXP.

103. That the updated 04/10/26 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to CAC.

104. Alternatively, that the updated 04/10/26 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify CAC.

105. EXP failed to properly reinvestigate Plaintiff's dispute.

106. As a result of EXP's failure to reinvestigate, the updated 04/10/26 credit report contained inaccurate information.

107. EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

108. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

109. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

110. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

111. That the updated 04/10/26 credit report did not contain updated marked as disputed information.

112. The updated 04/10/26 credit report contained inaccurate information.

113. CAC failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged tradeline.

114. TU, EQ, and EXP failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

115. CAC must have voluntarily updated the Plaintiff's alleged account by communicating with TU, EQ, and EXP.

116. That CAC furnished information to TU, EQ, and EXP regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice TU, EQ, and EXP of the disputes.

117. That CAC failed to update the account information and mark the account as disputed on the updated 04/10/26 credit report after Plaintiff disputed the account on 02/03/26 and was given notice of such by TU, EQ, and EXP.

118. In the alternative, if CAC properly updated the account information and marked the account as disputed with TU, EQ, and EXP after receiving notification of disputes from Plaintiff, then TU, EQ, and EXP failed to update the account information and mark the account as disputed on the updated 04/10/26 credit report.

119. That CAC never properly updated the account information or marked the account as disputed even after receiving information of the disputes from TU, EQ, and EXP.

120. Alternatively, TU, EQ, and EXP never updated the account information and marked the account as disputed even after receiving information of the dispute remark from CAC in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

121. All of Defendants' actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

122. The CRA Defendants' failure to report the Account correctly and failure to report the accurate status and accurate balance harmed Plaintiff's credit score and would, at least, mislead a third-party reviewing Plaintiff's credit history.

123. If the Furnishers had complied with their duties to reinvestigate the accounts when they received notice of the disputes, they would have conducted reasonable investigations and updated the information they were furnishing accordingly.

124. If the CRA Defendants would have complied with their statutory duties, inaccurate information concerning the accounts would not have been reported despite notice from Plaintiff.

125. Further, after receiving Plaintiff's disputes concerning the inaccurate information of the accounts, TU, EQ, and EXP are required to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit file(s) it published and maintained concerning Plaintiff.

126. Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive Practices of the CCS and CAC, and/or TU, EQ, and EXP.

127. Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading collection communications by CCS and CAC, and/or TU, EQ, and EXP.

128. Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by CCS and CAC, and/or TU, EQ, and EXP.

129. Plaintiff has suffered actual harm based on his costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

130. Plaintiff's injury-in-fact is fairly traceable to the challenged representations of CCS and CAC, and/or TU, EQ, and EXP.

131. Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

**Count I: Violation Of 15 U.S.C. § 1681e(b) of the FCRA-Reinvestigations of Disputed Information**

132. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

133. Plaintiff's credit report contained inaccurate information as it did not include a dispute notation even after Plaintiff disputed the accounts directly with TU, EQ, and EXP.

134. TU, EQ, and EXP failed to follow reasonable procedures to keep Plaintiff's credit file accurate by including incomplete information on Plaintiff's credit file; TU, EQ, and EXP failed to send

notice of the disputes received from Plaintiff to the furnishers as required, and TU, EQ, and EXP failed to update Plaintiff's credit file to ensure accuracy; TU, EQ, and EXP violated 15 U.S.C. 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

135. As a result of this conduct, action and inaction of TU, EQ, and EXP, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

136. TU, EQ, and EXP's conduct, action, and inaction were willful, rendering them liable for statutory damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

137. Due to TU, EQ, and EXP's conduct, Plaintiff is entitled to recovery costs and attorney's fees from TU, EQ, and EXP in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Amyel Lopes, Prays that this Court:

A. Declare that TU, EQ, and EXP's credit reporting actions violate the FCRA;

B. For TU, EQ, and EXP's willful violations, enter judgment in favor of Plaintiff Amyel Lopes, and against TU, EQ, and EXP, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C. For TU, EQ, and EXP's negligent violations, enter judgment in favor of Plaintiff Amyel Lopes, and against TU, EQ, and EXP, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

D. Or, in the alternative, enter judgment in favor of Plaintiff Amyel Lopes, and against TU, EQ, and EXP, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

E. Grant other such further relief as deemed just and proper.

**Count II: Violation Of 15 U.S.C. § 1681i of the FCRA-Reinvestigations of Disputed Information**

138. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

139. TU, EQ, and EXP were reporting inaccurate and incomplete information on Plaintiff's credit report.

140. TU, EQ, and EXP's inaccurate and incomplete reporting of Plaintiff's credit file is misleading to the extent that it can adversely impact Plaintiff's credit decisions.

141. Plaintiff disputed the accuracy of his credit report directly with TU, EQ, and EXP via dispute letters sent through USPS.

142. Defendants TU, EQ, and EXP violated 15 U.S.C. § 1681 after failing to conduct lawful reinvestigations of Plaintiff's disputes and provide the furnishers with notice of Plaintiff's dispute.

143. TU, EQ, and EXP failed to report the status of the disputed accounts as disputed or delete the inaccuracy from Plaintiff's credit report after receiving notice of the disputes directly from Plaintiff.

144. Defendants TU, EQ, and EXP willfully or negligently violated 15 U.S.C. § 1681i by failing to forward all relevant information to CCS and CAC; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source they have reason to know is unreliable; and by publishing inaccurate information.

145. As a result of this conduct, action and inaction of TU, EQ, and EXP, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

146. TU, EQ, and EXP's conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recovery actual damages under 15 U.S.C. § 1681o.

147. The Plaintiff is entitled to recovery costs and attorney's fees from TU, EQ, and EXP in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Amyel Lopes prays that this Court:

A. Declare that TU, EQ, and EXP's credit reporting actions violate the FCRA;

B. Enter judgment in favor of Plaintiff Amyel Lopes, and against TU, EQ, and EXP, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C. Or, in the alternative, enter judgment in favor of Plaintiff Amyel Lopes, and against TU, EQ, and EXP, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D. Grant other such further relief as deemed just and proper.

**Count III: Violation Of 15 U.S.C. § 1681s-2(B) of the FCRA- Duties of Furnishers of Information upon Notice of Dispute**

148. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

149. Defendants CCS and CAC violated 15 U.S.C. § 1681s-2(b) by continuing to report the CCS and CAC, representations within Plaintiff's credit file with TU, EQ, and EXP without also

including a notation that this tradeline was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the CCS and CAC representations; by failing to review all relevant information regarding same; by failing to accurately respond to CCS and CAC; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the CCS and CAC representations to the consumer reporting agencies.

150. As a result of this conduct, action and inaction of CCS and CAC, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

151. Defendants CCS and CAC's, conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

152. Plaintiff is entitled to recover costs and attorney's fees from CCS and CAC, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Amyel Lopes, Prays that this Court:

A. Declare that CCS and CAC's, credit reporting actions violate the FCRA;

B. Enter judgment in favor of Plaintiff Amyel Lopes, and against CCS and CAC, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C. Or, in the alternative, enter judgment in favor of Plaintiff Amyel Lopes, and against CCS and CAC, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D. Grant other such further relief as deemed just and proper.

**Count IV: Violations Of § 1692e Of The FDCPA – False, Deceptive, Or Misleading Collection Actions**

153. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

154. Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

155. That because Plaintiff disputed the debt, CAC AND CCS, when choosing to contact the consumer reporting agencies, was obligated to inform them of the disputed status of the account. See Dixon v. RJM Acquisitions, L.L.C., 640 Fed. Appx. 793 (10th Cir. 2016) (Reversed summary judgment to the collection agency on the consumer's § 1692e(8) claim that after she had disputed a debt, the agency had nevertheless reported the debt without disclosing the disputed. The consumer created a genuine fact issue given that she said during the recorded conversation: "I feel that all I owe is $20." A reasonable fact finder could treat the statement as a dispute of the alleged $102.99 debt.); Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173 (10th Cir. 2013) "(We agree with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt unless the debt collector knows of the dispute and elects to report to a CRA.")

156. CAC AND CCS used deceptive and misleading tactics when it communicated personal credit information which was known or which should have been known to be false, including the failure to communicate the debt was disputed in violation of 15 U.S.C. §§ 1692e, 1692e(8). See Sayles v. Advanced Recovery Systems, Incorporated, 865 F.3d 246, 249 (5th Cir. 2017); Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998) (The plain language of the FDCPA requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is

disputed. This standard requires no notification by the consumer but depends on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is required.)

157. CAC AND CCS's collection communications are to be interpreted under the "least sophisticated consumer" standard. See, Goswami v. Am. Collections Enter., Inc., 377 F.3d 488, 495 (5th Cir. 2004); Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir.1997) (When deciding whether a debt collection letter violates the FDCPA, this court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard.) See Also, Goswami, 377 F.3d at 495. (We must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors.")

158. CAC AND CCS violated the Plaintiff's right not to be the target of misleading debt collection communications.

159. CAC AND CCS violated the Plaintiff's right to a truthful and fair debt collection process.

160. CAC AND CCS's communications with Plaintiff were deceptive and misleading.

161. CAC AND CCS used unfair and unconscionable means to attempt to collect the alleged debt.

162. CAC AND CCS's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to CAC AND CCS's collection efforts.

163. CAC AND CCS's failure to mark a debt as disputed it knows or should know is disputed violates § 1692e, 1692e(8) of the FDCPA.

164. CAC AND CCS's conduct has caused Plaintiff to suffer damages including but not limited to a damaged credit score, the loss of time incurred by Plaintiff, and attorneys' fees paid for advice regarding her situation.

165. Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

166. Here, Plaintiff has suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of CAC AND CCS's conduct.

167. The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. CAC AND CCS's false representations misled the Plaintiff in a manner that deprived her of her right to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

168. Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered actual damages including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment.

169. Defendant CAC AND CCS's violation of § 1692e of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Amyel Lopes, prays that this Court:

A. Declare that CAC AND CCS's debt collection actions violate the FDCPA;

B. Enter judgment in favor of Plaintiff Amyel Lopes, and against CAC AND CCS, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C. Grant other such further relief as deemed just and proper.

**Count V: Violations Of § 1692d Of The FDCPA – Harassment or Abuse**

170. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

171. Section 1692d prohibits any debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

172. CAC AND CCS's communications with Plaintiff were meant to shame, embarrass, and harass Plaintiff by misrepresenting the alleged debts status.

173. CAC AND CCS attempted to coerce Plaintiff into paying an alleged debt he otherwise would not have paid by submitting false and inaccurate information to her credit report.

174. CAC AND CCS could have no other purpose in doing this except to harm Plaintiff's reputation and deprive her of her ability to receive any type of credit line unless he paid the alleged debts.

175. Defendant CAC AND CCS's violation of § 1692d of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Amyel Lopes, prays that this Court:

A. Declare that CAC AND CCS's debt collection actions violate the FDCPA;

B. Enter judgment in favor of Plaintiff Amyel Lopes, and against CAC AND CCS, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C. Grant other such further relief as deemed just and proper.

**COUNT VI: Violations Of § 1692f Of The FDCPA – Misleading Representations & Unfair Practices**

176. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

177. Section 1692f prohibits the use of unfair and unconscionable means to collect a debt.

178. CAC AND CCS attempted to collect a debt by distributing false information that would negatively impact Plaintiff's rights as a consumer, as well as that would harm Plaintiff's financial health.

179. CAC AND CCS used unfair and unconscionable means to attempt to collect the alleged debt.

180. CAC AND CCS's violation of § 1692f of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Amyel Lopes, prays that this Court:

A. Declare that CAC AND CCS's debt collection actions violate the FDCPA;

B. Enter judgment in favor of Plaintiff Amyel Lopes, and against CAC AND CCS, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C. Grant other such further relief as deemed just and proper.

**JURY DEMAND**

181. Plaintiff demands a trial by jury on all Counts so triable.

Dated: November 23, 2026

Respectfully Submitted,

**HALVORSEN KLOTE DAVIS**

By: /s/ Seid Music

Seid Music, #76713
Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO 63141
P: (314) 451-1314
F: (314) 787-4323
joel@hkdlawstl.com
seid@hkdlawstl.com
*Attorneys for Plaintiff*